J-S56016-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: C.M.H., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: M.P., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1707 EDA 2020 |

Appeal from the Order Entered July 29, 2020,
in the Court of Common Pleas of Bucks County,
Orphans' Court at No(s): No. 2020-A9013.

| | | |
|---|---|---|
| IN RE: M.N.R., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: M.P., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1708 EDA 2020 |

Appeal from the Order Entered July 29, 2020,
in the Court of Common Pleas of Bucks County,
Orphans' Court at No(s): No. 2020-A9012.

BEFORE:   BENDER, P.J.E., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KUNSELMAN, J.:              **FILED FEBRUARY 05, 2021**

In this consolidated matter, M.P. (Mother) appeals from the July 29,

2020 orders, which granted the petitions of the Bucks County Children and

Youth Social Services Agency (Agency) to involuntarily terminate her rights to

---

[*] Retired Senior Judge assigned to the Superior Court.

four-year-old daughter, C.M.H., and 8-year-old son, M.N.R., (collectively, the Children) pursuant to the Adoption Act. **See** 23 Pa.C.S.A. § 2511(a)(5), (8), and (b).[1] Additionally, counsel for Mother seeks permission to withdraw from further representation pursuant to **Anders v. California**, 386 A.2d 738 (1967). Upon our review, we find that counsel's **Anders** brief satisfies the requirements set forth in **Commonwealth v. Santiago**, 987 A.2d 349 (Pa. 2009), and that there are no non-frivolous claims that Mother can raise herein. Accordingly, we grant counsel's application to withdraw and affirm the termination orders issued by the Bucks County Orphans' Court.

The orphans' court thoroughly discussed the procedural background and relevant facts in its opinions[2] filed pursuant to Pa.R.A.P. 1925(a):

> The Agency was familiar with Mother and the [C]hildren for a number of years, having received and acted upon previous referrals for services. The current referral, which ultimately led to the termination of the parental rights of [Mother], was made to the Agency on January 11, 2017. At the time of the referral, [the Children] were living with Mother, while [C.M.H.'s father] lived in the home "from time to time." The reason for the referral was the substance abuse of Mother and [C.M.H.'s father].

---

[1] The biological father of C.M.H. is D.F.H. The court also terminated his parental rights, but he did not appeal. The biological father of M.N.R. is M.E.R., who voluntarily consented to the termination of his parental rights.

[2] We note the orphans' court authored a Rule 1925(a) opinion for each child. Although each opinion is largely identical, particularly in its analysis of pertinent legal issues, the opinions are unique in certain discussions of the Children. We cite the orphans' court opinion concerning C.M.H.'s case (1707 EDA 2020) as "O.C.O. Daughter," and the opinion concerning M.N.R.'s case (1708 EDA 2020) as "O.C.O. Son."

In November 2017, Mother was evicted from the home. As a result, the [C]hildren were informally placed into the care of family members. [C.M.H.] lived with her aunt and uncle from November 2017 until October 2018. Her brother, M.N.R., lived with his grandfather from November 2017 to August 2018, then with a family friend from August 2018 to October 2018.

On October 18, 2018, both [of the Children] were adjudicated dependent by the Bucks County Court of Common Pleas. The court deferred disposition for an additional assessment to determine the best interests of the [C]hildren. On November 26, 2018, the [c]ourt placed both [C]hildren in the temporary and physical custody of the Agency. At the time, both [C]hildren, together, were placed with the Foster Parents, with whom they have continued to live.

Following the adjudication of dependency, Placement Permanency Plans (PPP) were put into place for Mother, prior to possible reunification. Specifically, the objectives for Mother were as follows: that she stop abusing substances, i.e. "get clean and stay clean;" that she obtain a substance abuse evaluation, as well as a mental health evaluation, and comply with the recommendations therefrom; that she obtain appropriate housing and income to support herself and the [C]hildren; and that she visit with the [C]hildren on a regular basis. […]

Agency caseworker Steven Manginelli was assigned to the instance case in late December 2018. He testified at the termination hearing held on July 29, 2020 that, following the [C]hildren's placement in the foster home in November 2018, Mother only visited the [C]hildren during the first month. Mother did not visit her [C]hildren after December 20, 2018 until October 17, 2019, a period for almost ten (10) months.

Further, Mr. Manginelli testified that from March 15, 2019 until September 13, 2019, Mother no longer had contact with the Agency, and she and [C.M.H.'s father's] whereabouts were unknown. Later, Mother only explained to Mr. Manginelli that her phone was stolen. However, she never employed any other means to contact the Agency during that six-month period.

During the time that Mother and Father's whereabouts were unknown to the Agency, the goal of reunification changed to that of involuntary termination of their parental rights and adoption for each child. The [c]ourt changed these permanency goals for M.N.R. and [C.M.H.] on September 25, 2019 and November 27, 2019, respectively.

In September 2019, Mr. Manginelli learned that [C.M.H.'s father] was incarcerated, and he subsequently met with [the father] in the prison. [The father] advised him that during the period of time that he was "missing," he was living in Kensington, was homeless, and that he had been using heroin with Mother.

Mr. Manginelli testified that from October 2019 until January 2020, after Mother "resurfaced" at or near the same period as Father, she did have four in-person visits with her [C]hildren.

Nonetheless, on February 3, 2020, the Agency filed petitions for involuntary termination of the biological parents' parental rights. However, the Agency was unable to personally serve Mother with the same, as her physical whereabouts for service were again unknown. On the same date, the Agency simultaneously filed a motion requesting alternate service of its petition. By Court Order of February 12, 2020, the Agency was permitted to provide notice of the Agency's petition for termination of Mother's parental rights, and the hearing scheduled in connection for same, through publication in appropriate newspapers.

On July 9, 2020, notice to Mother and [C.M.H.'s father] of the Agency's request for termination and the July 29, 2020 hearing date was published in the Bucks County Courier Times, along with contact information for the Agency's caseworker. On July 16, 2020, the same notice was published in the Bucks County Law Reporter.

Mother's [counsel], who began representation of Mother in January 2020, advised the [c]ourt at the July 29, 2020 [termination] hearing that Mother was homeless and had no mailing address. [Counsel] stated that she was able to meet with Mother in person in February 2020, otherwise communicated with her by email or phone, and had provided Mother with the July 29, 2020 hearing date. Mother's

attorney advised the [c]ourt that Mother opposed termination of her parental rights.

From the period of March through May 2020, Mother again had some contact with her [C]hildren through video calls, as in-person contact was prohibited due to the onset of COVID-19.

On June 16, 2020, Christine McMonagle, Esquire was appointed as Guardian *ad litem* ["GAL"] for [the Children].[3] On July 7, 2020, Judith Algeo, Esquire was appointed to serve as counsel to represent the legal interests of M.N.R. **See** 42 Pa.C.S. § 6311(a); Pa.R.J.C.P. 1151(b).

The hearing for termination of Mother's and [C.M.H.'s father's] parental rights was held on July 29, 2020. Neither Mother nor [the father] appeared. The Agency had offered Mother transportation to the hearing, but Mother declined. This [c]ourt was advised at the hearing that both Mother and [the father] had active bench warrants for their arrest.

Mother's and [C.M.H.'s father's] attorneys were present at the hearing. Counsel for Mother advised the [c]ourt that she had previously been in phone contact with Mother, and that Mother was aware of the July 29, 2020 hearing, and that Mother had advised counsel that she would be present for the hearing. However, in the days leading up to the hearing, counsel was unable to speak with Mother; her calls to Mother went directly to Mother's voice mail. Counsel also emailed Mother a few days before the hearing, again advising her about the hearing and that she had not been able to reach her by phone. Counsel had previously made Mother aware of the importance of the hearing, and also called Mother the morning of the hearing to advise her of the same, all without response by Mother.

At the hearing, the Agency, through Mr. Manginelli, testified that at the time the [C]hildren were adjudicated dependent in October 2018, neither Mother nor [C.M.H.'s father was] in a position to care for either child. As of the filing of the petition to terminate and as of the date of the [termination]

_____

[3] We clarify that Ms. McMonagle served as GAL for both Children. Judith Algeo was appointed separate, legal counsel for M.N.R.

hearing, both Mother and [C.M.H.'s father] continued to be in positions where they could not care for the children.

Mr. Manginelli testified that, by contrast, the foster parents, who have continuously cared for the [C]hildren since November 2018, are able to support and provide for [them] with what they need to "live a healthy and beneficial life as children." The foster parents have no other children in the home. Both [of] the Child[ren] love the foster parents, consider them their family, call them "Mom" and "Dad," and believe that they belong with them. Moreover, the foster parents have the full support of Mother's extended family. The [C]hildren meet regularly with their extended biological family, and those relationships will continue.

[C.M.H.] has no special medical or developmental needs, but is receiving services for Post-Traumatic Stress Disorder, and is doing well.

The foster parents have expressed their desire to be an adoptive resource for both [C]hildren, which the Agency is inclined to recommend should the requisite background requirements for adoption be met.

The Agency opined at the hearing that involuntary termination of Mother's […] parental rights best serves the needs and welfare of each of the children.

The attorneys for the Child[ren…] similarly advised the [c]ourt that termination of Mother's parental rights […] were in the best interests of each child. Specifically, Ms. McMonagle, who was actually involved in the case since the [C]hildren first came into care, advised that [C.M.H.] is very healthy, has her own room, sleeps well, and is involved in gymnastics. [C.M.H.] is very bonded to the foster parents and [M.N.R.]. [C.M.H.] is very comfortable with the foster parents and considers them to be her parents.

*See* O.C.O. Daughter, 9/23/20, 2-7 (footnotes and citations to the record omitted).

Regarding M.N.R., the orphans' court determined further:

> [M.N.R.] has no special medical, emotional or developmental concerns, except ADHD, which is readily manageable. Ms. Alego[, M.N.R.'s legal interests counsel,] advised the [c]ourt that [M.N.R.] "strongly feels" that his permanent home is with his foster parents. He has his own bedroom, which was "tremendously organized," and to which he was apparently very attached. [M.N.R.] told Ms. Algeo that he liked to organize things, that his "first mother" [(Mother)] did not like him to do so, and that he would get into trouble with her if he tried to organize. He stated that he "did not want to go back living like that." [M.N.R.] asked counsel to tell the [orphans' court], "I like to organize things. It would make [Mother] mad. So I need to stay here. This is my family."

*See* O.C.O. Son, 9/23/20, at 6-7.

At the conclusion of the termination hearing, the orphans' court granted the Agency's petitions and terminated Mother's rights to C.M.H. and M.N.R. Counsel for Mother timely filed this appeal along with a notice of intent to file an *Anders* brief in lieu of a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(c)(4) (providing that, in a criminal case, counsel may file a record and serve on the judge a statement of intent to file an *Anders*/*McClendon* brief in lieu of filing a statement); *see also Interest of J.T.*, 983 A.2d 771 (Pa. Super. 2009) (determining that the *Anders* procedure set forth in Rule 1925(c)(4) is proper in a termination of parental rights case).

Counsel now presents for our review the following four issues of arguable merit:

> 1. Whether there was inadequate evidence to warrant terminations under 23 Pa.C.S.A. § 2511(a)(5) and (8)?

2. Whether there was inadequate evidence to warrant terminations under 23 Pa.C.S.A. § 2511(b)?

3. Whether C.M.H. should have been appointed separate, legal counsel?

4. Whether Mother had sufficient notice of the termination hearing?

*See* Mother's Brief at 13, 15, 19, 21.

"When faced with a purported *Anders* brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw." *Commonwealth v. Rojas*, 874 A.2d 638, 639 (Pa. Super. 2005) (quoting *Commonwealth v. Smith*, 700 A.2d 1301, 1303 (Pa. Super. 1997)). As noted above, "this Court extended the *Anders* principles to appeals involving the termination of parental rights." *In re X.J.*, 105 A.3d 1, 3 (Pa. Super. 2014) (citation omitted). To withdraw pursuant to *Anders*, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [*Anders*] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

*Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (citing *Commonwealth v. Lilley*, 978 A.2d 995, 997 (Pa. Super. 2009)). With respect to the third requirement of *Anders*, that counsel inform the appellant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy of the

letter sent to their client advising him or her of their rights." ***Commonwealth v. Millisock***, 873 A.2d 748, 752 (Pa. Super. 2005).

Additionally, an ***Anders*** brief must comply with the following requirements:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Santiago***, 978 A.2d at 361.

Additionally, this Court must also "conduct an independent review of the record to ascertain if there appear on its face to be arguably meritorious issues that counsel, intentionally or not, missed or misstated." of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." In ***Commonwealth v. Dempster***, 187 A.3d 266, 272 (Pa. Super. 2018) (*en banc*).

In the instant matter, counsel has filed a petition to withdraw, certifying that she has reviewed the case and determined that Mother's appeal is wholly frivolous. Counsel also has filed a brief that includes a summary of the history and facts of the case, issues raised by Mother, and counsel's assessment of why those issues are frivolous, with citations to relevant legal authority.

Counsel has included in her brief a copy of her letter to Mother, advising her that she may obtain new counsel or raise additional issues *pro se*. Accordingly, counsel has substantially complied with the requirements of **Anders** and **Santiago**. Consequently, we may now examine whether Mother's claims have arguable merit, before we conduct our independent review under **Dempster**.

We review an order terminating parental rights in accordance with the following standard:

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

**In re R.N.J.**, 985 A.2d 273, 276 (Pa. Super. 2009) (quoting **In re S.H.**, 879 A.2d 802, 805 (Pa. Super. 2005)). Moreover, we have explained that:

> The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

**Id**. (quoting **In re J.L.C. & J.R.C.**, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and

resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result. *In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa. Super. 2003).

Mother's first two issues pertain to Section 2511 of the Adoption Act, which governs the termination of parental rights and requires a bifurcated analysis. In addressing her claims, we are guided by the following:

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citing 23 Pa.C.S. § 2511, other citations omitted). The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *R.N.J.*, 985 A.2d at 276.

Instantly, the orphans' court terminated Mother's parental rights pursuant to Sections 2511(a)(5), (8), and (b). We need only agree with the orphans' court as to any one subsection of Section 2511(a), as well as Section

- 11 -

2511(b), in order to affirm. ***In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, we analyze the court's decision to terminate under Section 2511(a)(8) and (b), which provide as follows:

> **(a) General rule**.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> ***
>
> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.
>
> ***
>
> **(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(8), (b).

We first address whether the orphans' court abused its discretion by terminating Mother's parental rights pursuant to section 2511(a)(8).

> [T]o terminate parental rights pursuant to 23 Pa.C.S.A § 2511(a)(8), the following factors must be demonstrated: (1) the child has been removed from parental care for 12

months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child. Section 2511(a)(8) sets a 12-month time frame for a parent to remedy the conditions that led to the children's removal by the court. Once the 12-month period has been established, the court must next determine whether the conditions that led to the child's removal continue to exist, despite the reasonable good faith efforts of the Agency supplied over a realistic time period. Termination under Section 2511(a)(8) does not require the court to evaluate a parent's current willingness or ability to remedy the conditions that initially caused placement or the availability or efficacy of Agency services

*In re Z.P.*, 994 A.2d 1108, 1118 (Pa. Super. 2010) (citations and quotations added).

Here, the court found the Agency satisfied all three elements of the Section 2511(a)(8) analysis. First, the court determined that the statutory period of twelve months was established. The Children have been out of Mother's care since November 2017 when the Children went to stay with relatives; and they were formally placed with the foster parents in November 2018. Second, the court determined that the conditions which led to their removals still exists. Mother was plagued by drug addiction throughout these proceedings. She denied having a substance abuse issue, and she refused to submit to an evaluation, nor avail herself to potential treatment. At the time of the termination hearing, she remained homeless and jobless. Third, the court determined that termination of Mother's parental rights would best serve the needs and welfare of the Children. Mother disappeared from the Children's

lives for months on end. Consequently, the Children have turned to their foster parents for necessary parental care. The Children consider the foster parents to be their family, referring to them as "mom" and "dad." And the foster parents have the full support of Mother's extended family. Upon our review, we conclude that that the record supports the court's determination that the Agency satisfied its burden under Section 2511(a)(8). We agree with counsel that Mother's first issue is frivolous.

Next, we consider whether Mother's second issue has arguable merit, namely, whether the Agency satisfied its burden under the second prong of the termination analysis, Section 2511(b). This Court has explained that:

> Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In ***In re C.M.S.***, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. ***Id.*** However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. ***In re K.Z.S.***, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. ***Id***. at 763.

***In re Adoption of J.M.***, 991 A.2d 321, 324 (Pa. Super. 2010).

We direct our analysis to the facts relating to that section. Here, the orphans' court determined:

> There is no apparent bond between [C.M.H.] and Mother. As stated previously, [C.M.H.] has not lived with [Mother] since she was twenty-three (23) months old. Further, since the time that the [C]hildren were placed in the foster home, there was a ten-month period when [Mother] had no contact with the [Children.] The [Children] have, however, formed a parent-child bond with the foster parents[.] […] The foster parents also have the full support of [Mother's] extended family, with whom the [C]hildren also continue to have a relationship. […] There is no evidence or suggestion that [C.M.H.] would suffer any irreparable harm due to the termination of [Mother's] parental rights.

O.C.O. Daughter, at 16-17 (citations omitted).

The court similarly determined that M.N.R. had no apparent bond with Mother, and that no irreparable harm would come to M.N.R. upon Mother's termination. *See* O.C.O. Son, at 16-17. However, given that M.N.R. was appointed separate legal counsel, the orphans' court observed that M.N.R. told his legal counsel that he wished to live with his foster parents, stating that they were his family. *Id.* at 16 (citation to the record omitted). As there is competent evidence in the record to support the orphans' court determinations under Section 2511(b), we agree with counsel's conclusion that Mother's second issue is frivolous.

In the third issue of arguable merit, we address whether four-year-old C.M.H. should have been appointed separate legal counsel. In contested involuntary termination proceedings, the representation of the child's legal interest is indispensable. 23 Pa.C.S.A. § 2313(a). Two Supreme Court cases inform our examination of the GAL's representation of C.M.H.'s legal interest. In *In re Adoption of L.B.M.*, 161 A.3d 172, 174 (Pa. 2017) (plurality), and

- 15 -

subsequently in **In re T.S.**, 192 A.3d 1080, 1092 (Pa. 2018), the High Court declared that Section 2313(a) compels the family court to appoint counsel to represent a child's legal interest in every contested involuntary termination proceeding. The Supreme Court explained, "appointment of client-directed counsel optimizes the protection of the child's needs and welfare, which form the ultimate issue that the trial court must resolve before granting the [termination of parental rights]." **In re Adoption of L.B.M.**, **supra** at 180.

In many cases, the GAL – typically a holdover from the dependency proceedings – will continue to represent the child during the termination hearing. The GAL may continue this representation, in proper accordance with Section 2313(a), so long as the child's best interests do not conflict with the child's legal interests – *i.e.*, the child's preferred outcome of the termination proceedings. **See id.**

However, there can be no conflict when the child, for reasons of age or otherwise, is unable to express a preferred outcome. As the High Court observed in **T.S.**, Section 2313(a) does not require the appointment of separate counsel to represent "child's unknowable preference." **T.S.**, **supra**, at 1090. The question is whether the child is able to express "a subjective, articulable preference." **Id.** at 1089.

Here, the GAL continued to represent four-year-old C.M.H. during the termination proceedings. The orphans' court determined C.M.H. was too young to articulate a preferred outcome of the termination proceeding, and so the court did not appoint separate counsel. Moreover, the court observed that

C.M.H. considered the foster parents to be her family, and that C.M.H. was younger than two years old when she was last in Mother's care.

Insofar as we can discern, counsel advanced this issue of "arguable merit" in her **Anders** brief, because the 8-year-old M.N.R. was appointed separate, legal counsel, whereas the C.M.H. was not. Although M.N.R. was appointed separate counsel, he actually expressed that his preferred outcome was termination. Thus, there was no conflict between M.N.R.'s best interests and legal interests, and so M.N.R.'s separate appointment of legal counsel was ultimately superfluous. Just because M.N.R.'s separate appointment was superfluous, however, does not render C.M.H.'s singular representation deficient. Therefore, we agree with counsel's conclusion that Mother's third issue is frivolous.

The fourth and final issue of arguable merit is whether the Agency provided Mother with proper notice of the termination hearing. Section 2513(b) of the Adoption Act provides, in relevant part: "At least ten days' notice shall be given to the parent…whose rights are to be terminated, by personal service or by registered mail to his or their last known address **or by such other means as the court may require**." 23 Pa.C.S.A. § 2513(b) (emphasis added). Moreover, "if service cannot be made under the applicable rule the plaintiff may move the court for a special order directing the method of service." 231 Pa. Code § 430(a). When a movant in a termination of parental rights proceeding is unable to obtain actual service on a parent, service by registered mail to the parent's last known address requires a good

faith effort to identify the correct address for the parent. *See In re Maynard*, 473 A.2d 1084, 1086 (Pa. Super. 1984); *see also In re Adoption of K.G.M.*, 845 A.2d 861 (Pa. Super. 2004).

Here, all parties and the court knew Mother was homeless. After several failed attempts to verify Mother's address, the Agency obtained an order for alternate service by publication. Importantly, Mother's counsel averred at the termination hearing that Mother had actual knowledge of the hearing, that Mother had been in contact with counsel via phone and email (although not in the days immediately prior to the hearing), and that Mother informed counsel of her attention to appear. The court also observed that Mother had an active bench warrant, which might explain her absence. Given the Agency's good faith effort to locate Mother, and counsel's representations at the hearing, we conclude Mother had proper notice. We agree with counsel that this final issue is also frivolous.

In sum, we conclude that the aforementioned issues had no arguable merit. And upon our review of the record pursuant to *Dempster*, *supra*, we discern no additional, non-frivolous issues overlooked by counsel. We agree with Mother's counsel that an appeal in this case is wholly frivolous. Accordingly, we grant counsel's application to withdraw and affirm the termination orders.

Orders affirmed. Application to withdraw granted.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date:* *2/5/2021*